## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT D. HACKBARTH       )
                                )
          **Plaintiff,**        )
                                )
          **v.**                )    **Civil No. 13-1596**
                                )
**NATIONWIDE MUTUAL**     )
**INSURANCE COMPANY,**     )
                                )
          **Defendant.**      )

## OPINION AND ORDER

In his Complaint, Plaintiff Robert D. Hackbarth ("Hackbarth") is seeking a declaratory judgment that he is entitled to payment from Defendant Nationwide Mutual Insurance Company ("Nationwide") for first party medical benefits pursuant to a motor vehicle insurance Policy he purchased from Nationwide. Plaintiff is also asserting a state law bad faith claim pursuant to 42 Pa.C.S.A. § 8371. In response, Defendant has filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted [ECF #9].

### I. Standard of Review.

In Thompson v. Real Estate Mortgage Network, No. 12-3828, 2014 WL 1317137 (3d Cir. April 3, 2014), the appellate court recently stated that in ruling on a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted:

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be

enough to raise a right to relief above the speculative level," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Fowler</u>, 578 F.3d at 213 (quotation marks and citations omitted); <u>see also</u> <u>Covington v. Int'l Ass'n of Approved Basketball Officials</u>, 710 F.3d 114, 117–18 (3d Cir. 2013).

<u>Id</u>. at *2. Further, in ruling on a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)); <u>see also</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563, n.8 (2007). Additionally, where, as here, exhibits are attached to the Complaint by the plaintiff, when deciding a motion to dismiss, courts can consider these exhibits in addition to the allegations contained in the complaint. <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir.1993).

Further, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. As explained in <u>Phillips</u>, "[w]e have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." <u>Phillips</u>, 515 F.3d at 236 (citing <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir.2002)).

## II. Relevant Facts Alleged in Plaintiff's Complaint and exhibits attached to Complaint.

Plaintiff's 2001 GMC Sierra pick-up truck is insured through Nationwide under policy number 5437A752054 ("the Policy"). On February 2, 2013, Plaintiff had driven the truck to a

Wal-Mart located in Grove City, Pennsylvania. Complaint, ¶ 6. The "weather conditions preceding Plaintiff's trip to Wal-Mart caused a significant buildup of ice and snow on the parking lot surface." Id. at ¶ 7.

After finishing his shopping, Plaintiff loaded items into the passenger side of the insured truck, walked around to the driver side of the vehicle, and opened the driver side door and began to step into the truck, holding onto the door with his left hand and the handle of the door with his right hand. Complaint, ¶¶ 5-8; April 4, 2103 Transcript of Recorded Statement attached to Complaint, p. 3. Then, "while in physical contact with the GMC Truck for purposes of entering the same to operate it, Plaintiff slipped and fell from partially within the vehicle to the ground, sustaining serious and permanent injuries, including but not limited to a fractured left femur." Complaint, ¶ 9. Plaintiff further explained in a recorded statement he made for Defendant that "I opened up the driver's door and [was] in the process of stepping onto the running board, and when I lifted my right leg to step up on the running board, uh, being the parking lot was slippery, slipped and I fell." Transcript of Recorded Statement, p. 3. At the time Plaintiff slipped, his foot was not yet on the running board; "I was stepping to put it up on, getting ready onto the running board." Id. Plaintiff further explained that one foot was on the ground. Id.

On March 20, 2013, Plaintiff filed a claim with Defendant for first party medical benefits under the Policy as a result of the injuries he suffered on February 2, 2013. Id. at ¶ 15.

The Policy, which was attached to Plaintiff's Complaint, first explains under the title "INSURING AGREEMENT," that "we agree to provide the coverages the policyholder has selected. These selections are shown in the enclosed Declarations, which are part of this policy contract." Policy, D1. The Policy then explains under "DEFINITIONS" that "[t]his policy uses certain common words for easy reading. They are defined as follows." Id. Relevant to this case,

the terms "OCCUPYING" and "BODILY INJURY" are then defined. Id. "'OCCUPYING'

means in, upon, entering, or alighting from." Id. "'BODILY INJURY' means: a) physical injury,

b) sickness; c) disease; or d) resultant death." Id.

Thereafter, the Policy contains a section entitled "FIRST PARTY BENEFITS." Id. at F1.

Under "Coverage Agreement," the Policy states:

> This coverage provides First Party Benefit options in accordance with the
> Pennsylvania Motor Vehicle Financial Responsibility Law. The options and
> limits which the policyholder has selected are shown in the Declarations.
>
> We will pay First Party Benefits for the bodily injury of an insured as a result of
> an accident that arises out of the maintenance or use of a motor vehicle as a motor
> vehicle.

Id. The Policy then states "INSUREDS" and explains that "the policyholder and relatives are

covered while occupying or injured by any motor vehicle." Id.

At Defendant's request, on April 4, 2013, Plaintiff gave a recorded statement regarding

the accident; the transcript of the statement was attached to Plaintiff's Complaint. Complaint, ¶¶

18-19. He described the accident as occurring as follows:

> A: "I opened up the driver's door and in the process of stepping onto the running
> board, and when I lifted my right leg to step up on the running board, uh, being
> the parking lot was slippery, slipped and I fell."
> Q: "Okay, So did you have, uh, where were your feet placed then? Did you have,
> you said you had one foot one the running board? Where was your . . . "
> A: "Not yet. I was stepping to put it up on, getting ready onto the running board."
> Q. Okay, so one foot was on the ground?"
> A: "Yes."
> "And one foot in the air?"
> A; "Yes."
> Q: Okay. All right. And where were your hands at the time?"
> A: "Uh, it was on the, left one was on the door and the other one was on the
> handle."

Transcript, p. 3. On April 11, 2013, Defendant denied Plaintiff's claim for first party medical

benefits under the Policy, stating: "since [Plaintiff's] injury is a result of slipping on ice and not

4

the result of the use of a motor vehicle as a motor vehicle, there is no coverage under this policy for your First Party Benefit claim." Complaint, ¶ 20.

Plaintiff requested reconsideration on the coverage denial based on the application of the Pennsylvania Supreme Court's decision in Utica Mutual Insurance Company v. Contrisciane, 473 A.2d 1005 (Pa. 1984) to the facts of the claim. Id. at ¶ 22. On August 2, 2013, Nationwide affirmed its denial of Plaintiff's claim for benefits: "we are not disputing that Robert would be considered an occupant. It is our contention that the injury was caused from slippery conditions of the parking lot, not from the use of the vehicle." Id. at ¶ 32. Plaintiff then initiated the instant lawsuit.

**III. Legal Analysis.**

**A. Claim for Declaratory Judgment as to Entitlement to First Party Benefits under the Policy.**

Defendant first moves to dismiss Plaintiff's claim for declaratory relief with respect to his entitlement to first party benefits under the Policy "[b]ecause Slipping on an Accumulation of Snow and/or Ice While Entering a Motor Vehicle Is Not Conduct Which Arises Out of the Maintenance or Use of a Motor Vehicle as Required Under the Policy, the MVFRL, and Pennsylvania Case Law." Motion, p. 2. "Here, Plaintiff cannot recover first party benefits because there is no causal link between the injuries that he sustained when he fell and the use of his motor vehicle. The [Motor Vehicle Financial Responsibility Law] and the Policy both provide for recovery of first party medical benefits only when injuries arise 'out of the maintenance or use of a motor vehicle'." Defendant's Brief in Support of Motion to Dismiss ("Defendant's Supporting Brief"), p. 3.

5

In opposition to Defendant's Motion to Dismiss Plaintiff's claim for declaratory relief as to his entitlement to first party benefits under the Policy, Plaintiff asserts that (1) the plain language of the Policy warrants coverage, (2) Plaintiff's injuries arose out of the maintenance or use of a motor vehicle as a motor vehicle, and (3) a material factual dispute exists regarding Plaintiff's involvement with the vehicle at the time of the accident. Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition Brief"), pp. 6-15. "A proper consideration of the alleged facts in this case, along with the policy language in question and on-point appellate case law, make the resolution of Defendant's Motion to Dismiss a simple matter: it must be denied." Plaintiff's Opposition Brief, p. 5.

### 1. Whether the Plain Language of the Policy Warrants Coverage.

Plaintiff first argues that the Policy says: "INSUREDS [--] The Policy holder and relatives are covered while occupying or injured by any motor vehicle" and that "[t]his is not a conditional provision. Plaintiff Hackbarth is the policy holder, and Defendant . . . had admitted it is not contesting occupancy . . . Under Nationwide's policy language, the inquiry into coverage should have ended there, Plaintiff is entitled to First Party Benefits coverage." Plaintiff's Opposition Brief, p. 9. Plaintiff then contends that to the extent that "[t]he Coverage Agreement appears to set additional requirements under the 'Insured' section of the first party benefit policy," such that there is a contradiction between the two provisions which makes the contract ambiguous, then "'the policy is to be construed in favor of the insured [Plaintiff] to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage'." Id. at p. 8, (quoting Erie Ins. Exchange v. Conley, 29 A.3d 389, 392 (Pa. Super. 2011)).

6

Defendant responds by arguing that Plaintiff is not automatically entitled to coverage by meeting the definition of "insured" under the first party benefits sections of the Policy. Defendant's Reply Brief in Support of Motion to Dismiss ("Defendant's Reply Brief"), p. 2. Instead, it argues, whether coverage is afforded is determined by the Coverage Agreement, which states, "[Defendant] will pay First Party Benefits for the bodily injury of an insured as a result of an accident that arises out of the maintenance or use of a motor vehicle as a motor vehicle." Id. at p2, (citing Policy, p. F1). Thus, Defendant argues, satisfying the meaning of "insured" is only one of the elements that must be satisfied, and it contends that Plaintiff cannot satisfy the other required element, that the injury must "aris[e] out of the maintenance or use of a motor vehicle as a motor vehicle." Id.

Upon review of the plain language of the Policy, we agree with Defendant that entitlement to first party benefits under the Policy does not simply require that the injured party be an "insured." To the contrary, in order for one to be able to recover under the terms of the Policy, he must (1) be an "insured" and (2) have suffered "bodily injury" that (3) was the "result of an accident that arises out of the maintenance or use of a motor vehicle as a motor vehicle." Therefore, the inquiry before this Court is whether, assuming that that the factual allegations set forth in Plaintiff's Complaint, and attached exhibits, are true, Plaintiff has sufficiently alleged facts to support that he is an "insured" who suffered "bodily injury" that was the "result of an accident that arises out of the maintenance or use of a motor vehicle as a motor vehicle," as all those terms are defined under the Policy

**2. Whether Plaintiff's Injuries Arose Out of the Maintenance or Use of a Motor Vehicle As a Motor Vehicle.**

Defendant does not dispute that Plaintiff is an "insured" who suffered "bodily injury." With respect to whether Plaintiff's bodily injuries were "arising out of the maintenance or use of a motor vehicle as a motor vehicle," however, Defendant argues that because the instrumentality which caused the injury was the slippery conditions in the Wal-Mart parking lot and not Plaintiff's truck, there is no causal connection between Plaintiff's injuries and the use of the insured vehicle, i.e. Plaintiff's injuries were not the "result of an accident that arises out of the maintenance or use of a motor vehicle as a motor vehicle," and he cannot recover first party benefits under the terms of the Policy. Defendant's Supporting Brief, pp. 3-4.

In support of its position, Defendant first notes that this causal connection is required for compensation under the Pennsylvania MVFRL and the Policy as per Lucas-Raso v. Am. Mfrs. Ins. Co., 657 A.2d 1 (Pa. Super. 1995), wherein the state appellate court held that a plaintiff was not entitled to first party benefits for injuries sustained after falling in a snow covered hole while walking towards her vehicle to enter it because no causal connection existed between the injuries sustained and the use of the vehicle.

Next, Defendant emphasizes the similarities between the facts alleged by Plaintiff and those of other cases applying Pennsylvania law in which benefits were denied under the Pennsylvania MVFRL because the injuries did not arise out of the maintenance or use of a vehicle as a motor vehicle due to a lack of causation. See Defendant's Supporting Brief, pp. 4-5, (citing Smith v. State Farm, AR-99-001236 (C.P. Allegheny 1999) (concluding claim properly denied where plaintiff injured after falling on ice after opening vehicle door and attempting to enter); Hoover v. McCloskey Builders, 46 Pa. D. & C.4th 498 (Pa. Com. Pl. 2000) (finding claim

properly denied where plaintiff slipped and fell on ice while exiting vehicle); U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90 (3d Cir. 1996) (court held injuries caused when driver alighting from his vehicle slipped on grease from nearby building, fell, and struck his vehicle during the fall did not arise out of the maintenance or use of a motor vehicle)). Defendant further notes that the appellate court in U.S. Underwriters held that the "crucial point for triggering §1720's maintenance and use prohibition is a causal connection between the vehicle and injury." Defendant's Supporting Brief, p. 6. The court determined the cause of the injuries was the slipping on the grease, and it was "mere fortuity" that the plaintiff was still partially in his vehicle when the slip occurred. Id.

Defendant then argues that the instrumentality that caused the injury is the critical issue in determining the propriety of first party benefits, and the accident must involve the vehicle being used as a vehicle without the relationship between the injuries and the vehicle being mere happenstance. Defendant's Supporting Brief, p. 6 (citing Am. Nat'l Prop. & Cas. Co. v. Terwilling, No. 06-0268, U.S. Dist. LEXIS 9108 (W.D. Pa. Feb. 7, 2007)). Therefore, Defendant argues, in this case, the vehicle was not the cause of Plaintiff's fall, Plaintiff's injuries were not the result of the use of the vehicle as a vehicle, and it is immaterial whether Plaintiff was in contact with or partially inside his vehicle at the time he was injured. Id. at p. 7.

Finally, Defendant argues Plaintiff's reliance on Utica Mut. Ins. Co. v. Contrisciane is misplaced because Plaintiff's Policy does not condition first party benefits on whether Plaintiff was "occupying" the vehicle, but rather it conditions payment on a causal connection between the injuries and the use of the vehicle. Id. The Utica court had determined that a person who is engaged in the use of an insured vehicle is considered to be "occupying" that vehicle, within the meaning of the policy, if (1) there is a causal connection between the injury and the use of the

9

vehicle; (2) the person asserting coverage is in reasonably close proximity to the vehicle, although the person need not be touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented; and (4) the person is engaged in a transaction essential to the use of the vehicle. Utica, 473 A.2d at 1009. Defendant asserts that Plaintiff does not satisfy this test because there is no causal relationship between the injuries and the use of a vehicle. Id. Defendant also notes that the relevant policy language in Utica is not the same as that at issue in this case because the issue there involved uninsured benefits, not first party benefits. Id. Therefore, the Utica court was concerned with the status of occupancy and not whether the injury arose out of the maintenance or use of the vehicle. Id.

In response, Plaintiff argues that his injuries did arise out of the maintenance or use of a motor vehicle as a motor vehicle. Plaintiff's Opposition Brief, p. 9. In support therefore, first Plaintiff argues that the language at issue in the Utica decision is the same as that in claims for first party benefits, and that the Lucas-Raso court relied on the Utica test to determine coverage for first party benefits in the context of an underlying claim for worker' compensation subrogation in light of the anti-subrogation provision of 75 Pa. C.S.A §1720. Id. Plaintiff notes that the Lucas-Raso court observed, "it is not disputed that 'maintenance and use' is presumed if occupancy can be shown." Id. (quoting Lucas-Raso, 657 A.2d at 4). Plaintiff contends that he loaded items into the vehicle, opened the door, stepped onto the running boards, and "basically slipped from the running boards and from the vehicle;" therefore, this case is the "polar opposite" of Lucas-Raso, which involved an injured party falling into a pothole while walking towards her vehicle to enter. Id. The Lucas-Raso court noted that no other vehicle was involved, the plaintiff had not exited or entered the vehicle, and the plaintiff had not opened the door, and

10

therefore, the required causal connection between the injuries and vehicle did not exist. Id. Thus, Plaintiff argues the opposite outcome should be reached in his case. Id.

Next, Plaintiff references the similarities between his case and a case that the Lucas-Raso court referenced with approval, Frain v. Keystone Ins. Co., 640 A.2d 1352 (Pa Super. 1994). Id. at pp. 10-11. There, the injured party had placed items within the vehicle, opened the door, and possessed the intent to enter it when she was injured on a flowerbed several feet away after fleeing from the vehicle because of an approaching truck. Frain 640 A.2d at 465. The Frain court found the injured party to be an occupant, based on the Utica test, which included finding the causal connection requirement had been satisfied. Id. at 472.

Further, Plaintiff argues that his case fits within the meaning of "arising from the maintenance or use of a motor vehicle" as understood by the appellate court in Allstate Prop. & Cas. Ins. Co. v. Squires, 667 F.3d 388 (3d Cir. 2012) Plaintiff's Opposition Brief, p. 12. In Squires, the Third Circuit court found that an injury resulting from a single vehicle accident caused by a box left in the road by a vehicle arose out of the maintenance or use of a motor vehicle as a motor vehicle. Id. at 396. The court determined that the injury causing instrumentality did not necessarily have to be the vehicle, an attenuated nexus between the injury and vehicle could be sufficient, and that there could be multiple causes to a single accident with the vehicle use being only one. Id. at 395. Plaintiff also explains that the Squires court confirmed that "the MVFRL is to be liberally construed in order to afford the greatest possible coverage to injured claimants and in close or doubtful insurance cases, a court should resolve the meaning of insurance policy provisions or legislative intent in favor of coverage for the insured." Plaintiff's Opposition Brief, p.12.

Plaintiff then rebuts Defendant's comparison of the facts of this case to those in Smith, Hoover, and U.S. Underwriters. First, Plaintiff argues that Smith is not dispositive to his case because the Smith court made the observation that the plaintiff "was not in the act of entering her vehicle which caused appellant's fall." Id. at p. 13. Therefore, Plaintiff contends, because this distinction is present in his case, the Smith court presumably would find the causal connection on the facts of this case. Id. Next, Plaintiff argues that the Hoover decision is distinguishable from his case because in Hoover there were not enough facts to determine if the plaintiff had already exited or was in the process of alighting from the vehicle. Id. Finally, Plaintiff contends that the Third Circuit court's decision in U.S. Underwriters is of reduced precedential importance to his case because the court confused occupant status versus causal connection. Id. at p. 14. Plaintiff also contends that the applicability of U.S. Underwriters is reduced because the Policy in this case makes the status of occupancy an issue. Id.

Replying to Plaintiff's Opposition to Motion to Dismiss, Defendant contends the cause of Plaintiff's injuries, slipping on snow and ice in the store's parking lot, precludes the required casual connection between the injury and the maintenance or use of the vehicle. Defendant's Reply Brief, p. 4. In support thereof, Defendant cites to the Lucas-Raso decision wherein the Pennsylvania appellate court found that even when the plaintiff is deemed an "occupant," the plaintiff must still establish the existence of a causal connection between the injuries and the maintenance or use of a motor vehicle. Id. at p. 3 (citing Lucas-Raso, 657 A.2d at 12-13). Defendant also contends that Plaintiff's Brief in Opposition misstates the facts of the case, in that in the Brief Plaintiff contends, in direct contradiction to his recorded statement, in order to distinguish Lucas-Raso, that "[Plaintiff] basically slipped from the running boards and fell from the vehicle," when in the recorded statement he'd indicated that he had not yet stepped on the

12

running board at the time he slipped on the snow and ice. Id. at p. 4 (citing Plaintiff's Opp. Br., p. 10).

Defendant also indicates the similarities between these facts and those in the U.S. Underwriters case. Id. The U.S. Underwriters court reasoned that the fact that the plaintiff was partially in his vehicle when the fall occurred was nothing more than "mere fortuity" and therefore the causal connection was not present. Id. (citing U.S. Underwriters 80 F.3d at 95). Applying this reasoning to this case, Defendant argues the fact that Plaintiff was next to his vehicle at the time of the fall does not change the cause of the injury. Id.

Defendant also argues the similarity between Plaintiff's injuries and that of the plaintiff in Lucas-Raso and the dissimilarity between Plaintiff's case and those relied upon by Plaintiff in his Brief in Opposition to Motion to Dismiss: Frain and Squires. Id. at pp. 4-5. Specifically, as to the Lucas –Raso decision it again contends that in his Opposition Brief, "Plaintiff's rendition of the facts is inaccurate and eliminated the crucial fact that Plaintiff slipped on the snowy/icy condition in the parking lot while on the ground – similar to the plaintiff in *Lucas-Raso*." Id. at p. 4. Defendant then notes that the policy requirement in Frain revolved around the issue of occupancy and did not condition benefits on injuries arising out of the maintenance or use of a motor vehicle as is required under the Policy in this case. Id. at p. 5. With respect to Squires, Defendant notes that the policy provision in that case was one of uninsured motorist coverage, not first party benefits, and therefore "a completely different policy provision than is at issue here." Id. Defendant also contends that the Squires court actually agreed with the U.S. Underwriters decision and did not reduce its importance as contended by Plaintiff in that the Squires court distinguished between the grease on the ground from a nearby building in U.S. Underwriters and the box dropped in the road by a vehicle in Squires, and concluded that the

13

latter was more closely related to the use of a vehicle; whereas the vehicle in U.S. Underwriters was only the "situs of the injury, its presence was not instrumental in the fall." Id. (citing Squires 80 F.3d at 395).

Taking the factual allegations contained in Plaintiff's Complaint as true for purposes of deciding this motion to dismiss, we find that Plaintiff has sufficiently alleged facts to support that he is an "insured" and that he suffered "bodily injury" as those terms are defined under the Policy. We further find, however, that Plaintiff, who has alleged that he was injured when he slipped and fell "being the parking lot was slippery," as he held onto the door and handle of the door of the truck as he stepped into it, has not sufficiently alleged facts to support that his bodily injury was the "result of an accident that [arose] out of the maintenance or use of a motor vehicle as a motor vehicle," as required to be entitled to first party benefits under the Policy. See Complaint ¶¶ 8-9; Transcript, p. 3. We reach this legal conclusion because, as stated in the Squires decision, the vehicle "was the situs of the injury," but "its presence was not instrumental in the fall," and "the presence of [the] vehicle was merely incidental to the conditions that caused the injuries at issue," that being the slippery parking lot. Squires, 667 F.3d at 395. Accordingly, having concluded that Plaintiff has not been sufficiently alleged a claim for declaratory relief upon which relief can be granted with respect to his entitlement to first party benefits under the Policy, Defendant's motion to dismiss Plaintiff's request for Declaratory Judgment must be granted.

In so concluding, we also disagree with Plaintiff's contention that Defendant's Motion to Dismiss should be denied because a material fact is in dispute regarding the extent of his involvement with the vehicle at the time of the fall. Plaintiff's Opposition Brief, p. 15. This involvement is relevant to the causal connection, Plaintiff contends, and the accident has been

captured on a Wal-Mart security camera but has yet to be turned over into Plaintiff's possession. Id. Therefore, Plaintiff asserts, that it would be improper to grant Defendant's Motion to Dismiss until this video is reviewed. Id.

For purposes of determining this Motion to Dismiss, we have, as we must, assumed that the factual allegations contained in Plaintiff's Complaint are true and also considered the exhibits Plaintiff attached to his Complaint. If there were additional facts to support either of his claims against Defendant, Plaintiff should have included them in his Complaint.

**B. Bad Faith Claim.**

Defendant also moves to dismiss Plaintiff's bad faith claim. Defendant's Supporting Brief, p. 8. In support thereof, Defendant first argues that a claim for bad faith arising under an insurance policy must be dismissed as a matter of law if the court finds that there is no coverage under the policy. Id. Defendant asserts that dismissal in this situation has been found by a multitude of courts in previous cases and is consistent with the holdings of other jurisdictions. Id. at pp. 8-9. "Obviously, denying a claim because it is not covered by the insurance policy is an inherently reasonable decision – neither unfounded nor reckless. In this case, therefore, since there is no coverage for the Plaintiff's claim, his bad faith cause of action should be dismissed as a matter of law." Id. at p. 9.

Defendant also argues that Plaintiff's bad faith claims should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff's allegations of bad faith are "unsupported conclusions and bald allegations" and "mere legal conclusions that lack supporting factual basis." Id at pp. 9-10 (citing Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp.2d 591 (E.D. Pa., 2011) (court dismissed a bad faith claim where the complaint alleged, among other things, that the defendant had "unreasonably refused to indemnity Plaintiff for his loss," "fail[ed]

15

to conduct a reasonable investigation," "den[ied] benefits to plaintiff without a reasonable basis," and "knowingly or recklessly disregard[ed] the lack of a reasonable basis to deny plaintiff's claim" concluding that these allegations were "merely conclusory legal statements and not factual averments").

In response, Plaintiff argues that unless and until Defendant's denial of first party benefits is shown to be correct and in good faith, the bad faith claims have merit. Plaintiff's Opposition Brief, p. 16. Plaintiff further argues that "discovery will determine the breadth and extent" of Defendant's bad faith conduct and that the allegations in the complaint are specific enough to withstand Defendant's Motion to Dismiss. Id.

Plaintiff does, however, concede that if Count I of the Complaint, "Declaratory Judgment," is dismissed that Count II of the Complaint, "Bad Faith," must be dismissed as well because his bad faith claim is predicated on the fact that Defendant lacked any reasonable basis for denying Plaintiff's claim for first party medical benefits. Id. However, the bad faith claim should remain if Defendant fails to prevail on their motion to dismiss Count I. Id.

Replying to Plaintiff, Defendant argues Plaintiff's position that the "breadth and extent" of the bad faith conduct will be determined later is not sufficient to survive a motion to dismiss because Plaintiff must plead sufficient facts to support a plausible bad faith claim. Def. Rep., p. 6. Further, Defendant argues that Plaintiff cannot plead facts to support a bad faith claim because there was no bad faith. Id. Defendant notes that it investigated the claim and obtained a recorded statement from Plaintiff, in which Plaintiff admitted that his fall was caused by snow and ice on the ground. Id. Defendant asserts it determined the injuries did not arise out of the maintenance or use of a motor vehicle based on its reasonable interpretation of relevant case law, the Policy,

and facts. Id. Defendant asserts that their denial of coverage cannot be said to be unreasonable or reckless. Id. at p. 7.

We find that having granted Defendant's Motion to Dismiss Plaintiff's request for Declaratory Judgment because Plaintiff is not entitled to coverage under the terms of the Policy, we also must grant Defendant's Motion to Dismiss Plaintiff's bad faith claim, since as Plaintiff admits "in the event Defendant Nationwide prevails on its argument with regard to the dismissal of Count 1 of the Complaint, Count II must be similarly dismissed." Plaintiff's Response, p. 16.

We further find that had we denied Defendant's Motion to Dismiss Count I, we still would grant Defendant's Motion to Dismiss Plaintiff's bad faith claim because Plaintiff's Complaint fails to aver sufficient facts which allow for drawing a reasonable inference that Defendant acted in bad faith when denying coverage under the Policy. The standard for bad faith claims under § 8371 requires by clear and convincing evidence that the insurer (1) lacked a reasonable basis for denying benefits and (2) knew or recklessly disregarded its lack of reasonable basis. Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 234 (3d Cir. 1997). Accepting Plaintiff's alleged facts as true and disregarding legal conclusions, we find Plaintiff has not alleged sufficient facts to establish that Nationwide lacked a reasonable basis for denying benefits and knew or recklessly disregarded its lack of reasonable basis.

**IV. Opportunity to Amend Complaint.**

We must next decide whether Plaintiff should be given the opportunity to amend his Complaint. As recently explained by the appellate court in Stone v. New Jersey Administrative Office of the Courts, 2014 WL 260291 (3d Cir. Jan. 24, 2014):

> Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleadings after the initial period for amendments as a matter of course "only with the opposing party's written consent or the court's leave." Fed.R.Civ.P 15(a)(2). Because the rule requires that "[t]he court should freely give leave when justice so

requires," id., "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust," Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir.2006). "[U]ndue delay, bad faith, and futility" are among the factors potentially justifying denial of leave to amend. Id. Amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213 F.33 113, 115 (3d Cir. 2000).

Id. at *3.

As applied to this case, we find that it would be futile to allow Plaintiff to amend this Complaint because in order for the amendment not to be futile, in that it would state a claim upon which relief could be granted, Plaintiff would have to change the facts underlying his claims to a version different from those alleged in the original Complaint. Therefore, we will grant Defendant's Motion to Dismiss Plaintiff's Complaint with prejudice.

**V. Conclusion.**

For the reasons set forth above, Defendant Nationwide's Motion to Dismiss is granted with prejudice. An appropriate Order follows:

## ORDER

AND NOW, this 8th day of July, 2014, it is hereby ORDERED, ADJUDGED, AND DECREED that Defendant Nationwide's Motion to Dismiss Plaintiff Robert D. Hackbarth's Complaint [ECF #9] is GRANTED with prejudice.

The Clerk of Court shall mark this case CLOSED.

Maurice B. Cohill, Jr.
Senior United States District Court Judge

18